**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**GLEN RUSHEFSKY**, on behalf of himself and all others similarly situated,

Plaintiff,

**CARVANA, LLC,**

Docket No. _____

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, GLEN RUSHEFSKY ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against CARVANA, LLC ("CARVANA" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.carvana.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, GLEN RUSHEFSKY, is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. 284906. According to a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. Dr. Mendel documents that Mr. Rushefsky suffers from profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both federal and New York State criteria for legal blindness. Due to the severity and permanence of his

condition, Dr. Mendel recommends that Mr. Rushefsky receive 24-hour supportive care to ensure his safety and ability to perform activities of daily living. See Exhibit A.

2. Because of his permanent and irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, NVDA can identify vehicle images, read descriptions, announce interactive controls, and allow blind consumers to browse and sell vehicles independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site unusable for blind users.

3. Prior to becoming disabled, Mr. Rushefsky was a licensed driver who owned and operated a **classic Mercedes-Benz 450SEL 6.9**, a rare flagship performance sedan produced in limited quantities between 1975 and 1981 and widely regarded as one of the most valuable and historically significant Mercedes models of its era. Well-maintained examples of the 450SEL 6.9 routinely command **$45,000 to over $120,000** on the collector market, and Mr. Rushefsky’s vehicle represents one of his most significant personal assets. Following his diagnosis with LHON and the resulting permanent loss of his ability to drive, he retained possession of this vehicle with the concrete and ongoing intent to sell it. Because he can no longer safely operate a motor vehicle and faces substantial mobility limitations due to his vision loss, Mr. Rushefsky requires an accessible online platform to independently list, describe, and sell his 450SEL 6.9 without traveling to physical dealerships or relying on third-party intermediaries. His inability to access Carvana’s website prevented him from initiating the sale of this high-value vehicle, causing a direct, personal, and particularized injury. Mr. Rushefsky remains ready and willing to return to

www.carvana.com to complete the sale of his 450SEL 6.9 as soon as the Website is made accessible.

4. Multiple acquaintances and members of the visually impaired community informed Mr. Rushefsky that Carvana's website, www.carvana.com, was widely regarded as user-friendly, straightforward, and designed to facilitate seamless vehicle sales and purchases entirely online. Based on these representations and Carvana's prominent marketing as a technology-driven, customer-centric platform, Mr. Rushefsky believed that Carvana's website would provide him with an accessible means to obtain a valuation for his Mercedes-Benz, review purchase offers, and complete a vehicle sale transaction independently using his screen-reader software.

5. Defendant CARVANA, LLC owns, operates, and controls the commercial retail website www.carvana.com, which markets and facilitates the purchase and sale of used vehicles to consumers throughout the United States, including New York. The Website functions as an online automotive marketplace and a digital gateway to Defendant's nationwide vehicle acquisition and sales network. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

6. On four separate occasions—December 13, 2025, December 14, 2025, February 10, 2026, and March 5, 2026—Mr. Rushefsky visited www.carvana.com using NVDA with the intent to explore the vehicle selling process, obtain an appraisal or offer for his classic Mercedes-Benz, and complete a sale transaction. An unofficial estimate by a close friend had advised Plaintiff that well-maintained examples of the 450SEL 6.9 routinely command **$45,000 to over $120,000.** Thus, his visits to the Website were motivated by a genuine desire to sell his **collection edition vehicle** through this online platform that had been recommended to him as accessible and easy to use.

7. During each visit, however, Mr. Rushefsky encountered multiple accessibility barriers that prevented him from meaningfully navigating the Website or initiating the vehicle sale process. For instance, NVDA announced vehicle images only as "graphic" without descriptive alternative text, interactive buttons and links were presented as unlabeled or empty controls, form fields lacked accessible labels or instructions, and critical navigation elements could not be identified or activated using his screen-reader software. As a result, he could not determine how to begin the vehicle sale process, could not input information about his Mercedes-Benz, and could not navigate to any page that would allow him to receive an offer or complete a transaction. Defendant provided no accessible alternative means for blind consumers to obtain the same services. Exhibit B

8. Automated accessibility audits confirm the barriers Mr. Rushefsky personally encountered. Independent SORT-SITE quality and accessibility validation reports conducted on www.carvana.com reveal systemic and pervasive violations across the Website. Specifically, accessibility scans identified **2,648 pages with accessibility problems**, including missing alternative text for images, empty buttons, empty links, broken ARIA references, missing form labels, unlabeled interactive controls, contrast errors, and improper semantic markup. The reports documented **60 distinct accessibility issues affecting 6,043 pages**, with multiple Level A WCAG violations—the most fundamental tier of accessibility compliance. These findings confirm that the Website's inaccessibility is not isolated but rather systemic, affecting thousands of pages across Defendant's digital platform.

9. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Mr. Rushefsky—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services,

privileges, and advantages, in violation of Title III of the Americans with Disabilities Act, the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law.

10. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA. Plaintiff intends to return to www.carvana.com and utilize its vehicle selling services once the Website has been fully remediated to comply with applicable accessibility standards, as he continues to own his classic Mercedes-Benz and seeks to sell it through an accessible online platform.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*, and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part

of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

14. Defendant Carvana, LLC conducts substantial, continuous, and systematic business within this District by marketing, advertising, purchasing, and selling used vehicles to New York consumers through its highly interactive retail Website, www.carvana.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, facilitating vehicle sales and purchases to New York residents, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

16. Plaintiff GLEN RUSHEFSKY is a legally blind resident of Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of his irreversible vision loss, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, access information, and complete online transactions independently.

17. Prior to his disability, Mr. Rushefsky was a licensed driver who owned and operated a classic **Mercedes-Benz 450SEL 6.9** Mercedes-Benz automobile. Following his diagnosis with LHON and the permanent loss of his driving privileges, he has retained possession of this vehicle with the intent to sell it. As someone who can no longer safely drive and who faces significant mobility challenges, Mr. Rushefsky sought an accessible online platform through which he could independently list and sell his Mercedes-Benz without traveling to physical locations or relying on others for assistance.

18. Defendant CARVANA, LLC is a business entity that owns, operates, controls, and maintains the commercial retail website www.carvana.com, which markets and facilitates the purchase and sale of used vehicles to consumers nationwide, including residents of New York. The Website functions as a fully interactive online automotive marketplace and a

primary channel through which Defendant advertises, promotes, purchases, and sells vehicles.

19. Defendant markets, advertises, and facilitates vehicle transactions directly with New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse vehicles, obtain valuations, sell their cars, review vehicle descriptions, access financing options, and complete purchase or sale transactions. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

20. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

21. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

22. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, selling personal property, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

23. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

24. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

25. Plaintiff **Glen Rushefsky** is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

26. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace.

*Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text... The screen reading software uses auditory—rather than visual—cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*See also* American Foundation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed March 19, 2026), noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

27. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

28. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology).

## STATEMENT OF FACTS

### Plaintiff's Disability and Need for Accessible Online Vehicle Sale Services

29. Plaintiff GLEN RUSHEFSKY is a legally blind consumer residing in Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. 284906. As documented in a July 15, 2025, medical evaluation by Dr. Samuel R. Mendel, MD, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration

of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity. Because of this permanent impairment, Mr. Rushefsky relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, access information, and complete online transactions.

30. LHON is a permanent, non-reversible condition for which there is no curative treatment. Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to conduct business independently, access services, and participate in online commerce on equal terms with sighted consumers.

31. Prior to becoming disabled, Mr. Rushefsky was a licensed driver who owned and operated a classic **Mercedes-Benz 450SEL 6.9** Mercedes-Benz automobile. Following his diagnosis with LHON and the resulting complete and permanent loss of his ability to safely operate a motor vehicle, Mr. Rushefsky retained possession of this classic Mercedes-Benz with the intent of selling this very rare automobile as an unofficial estimate by a close friend had advised Plaintiff that well-maintained examples of the 450SEL 6.9 routinely command **$45,000 to over $120,000.** Thus, his visits to the Website were motivated by a genuine desire to sell his **collection edition vehicle** through this online platform that had been recommended to him as accessible and easy to use.

32. As someone who can no longer drive and who faces significant mobility limitations due to his visual impairment, Mr. Rushefsky sought a convenient, accessible, and reputable online platform through which he could independently obtain a vehicle appraisal, review

offers, and complete a sale transaction without the need to travel to physical dealerships, coordinate in-person inspections, or rely on third-party intermediaries to act on his behalf.

33. Multiple acquaintances, including members of online forums for individuals with disabilities and the visually impaired community, informed Mr. Rushefsky that Carvana's website, www.carvana.com, was widely regarded as a user-friendly, streamlined, and technology-driven platform specifically designed to facilitate seamless vehicle purchases and sales entirely online. Based on these representations and Carvana's extensive marketing as a customer-centric, digital-first automotive marketplace, Mr. Rushefsky believed that Carvana's website would provide him with an accessible means to sell his Mercedes-Benz independently using his screen-reader software.

**Plaintiff's Attempts to Access www.carvana.com**

34. On **December 14, 2025**, Mr. Rushefsky returned to www.carvana.com, hoping to find an accessible path to the vehicle selling interface. Using NVDA, he attempted to use the Website's search or navigation features to locate information about selling a vehicle. However, form fields and search boxes were presented without accessible labels or instructions, making it impossible for NVDA to announce their purpose or inform Plaintiff how to interact with them. When he attempted to navigate through dropdown menus or expandable sections, NVDA did not announce changes in state (such as whether a menu was expanded or collapsed) or provide accessible names for the options within those menus. Interactive controls such as "Get an Instant Offer" or "Start Your Appraisal" buttons were announced by NVDA as unlabeled or generic elements and activating them produced no accessible feedback confirming that an action had been taken or that a new page had loaded. Links and buttons in the header, footer, and sidebar navigation were frequently announced as "link" or "button" with no descriptive context, forcing Plaintiff to guess their function

based on their position in the reading order rather than their accessible names. Because critical navigation elements, form fields, and interactive controls lacked proper semantic markup, accessible labels, and keyboard-accessible functionality, Mr. Rushefsky was once again unable to initiate the vehicle selling process or obtain any information about how to sell his Mercedes-Benz through Carvana's platform.

35. On **February 10, 2026**, Mr. Rushefsky made a third attempt to access www.carvana.com and navigate to the vehicle selling interface. Using NVDA, he explored multiple sections of the Website, including pages labeled "Sell/Trade" or "How It Works," but encountered the same persistent accessibility barriers. Vehicle listing pages presented grids or carousels of vehicle images, each announced by NVDA only as "graphic" or "link graphic" without any alternative text indicating the year, make, model, mileage, price, or condition of the vehicles displayed. Filter and sort controls, which allow sighted users to narrow results by criteria such as price, location, or vehicle type, were not exposed as properly labeled form controls; NVDA announced them as isolated "button" or "combo box" elements with no clear relationship to the underlying options, and in many cases activating a control produced no audible change in focus or state. When Mr. Rushefsky attempted to access forms designed to capture vehicle information for appraisal purposes—such as VIN entry fields, make and model selectors, mileage inputs, or condition assessments, these fields were either unlabeled, lacked accessible instructions, or were embedded within multi-step interfaces that did not announce progress or provide clear feedback about what information was required. Empty links and buttons appeared throughout the page, announced by NVDA as "link" or "button" with no associated text, making it impossible to determine their purpose or whether they were relevant to the vehicle selling process. Because the Website's navigation structure, form elements, and interactive

controls were not coded in a manner compatible with screen-reader software, Mr. Rushefsky could not independently complete any step of the vehicle selling process, could not input information about his Mercedes-Benz, and could not obtain an offer or valuation for his vehicle.

36. On **March 5, 2026**, Mr. Rushefsky visited www.carvana.com for a fourth time, intending to make one final attempt to sell his classic Mercedes-Benz through Defendant's platform. Using NVDA, he navigated directly to pages that appeared to offer vehicle selling or trade-in services, but the accessibility barriers he had encountered on previous visits persisted without improvement. Images of vehicles, logos, and promotional graphics were announced by NVDA only as "graphic" or "image" without descriptive alternative text, leaving Plaintiff unable to understand the visual information conveyed to sighted users. Interactive elements such as buttons labeled "Get Your Offer," "Start Now," or "Continue" were presented as unlabeled controls or announced generically as "button" without accessible names that would allow Plaintiff to understand their function or purpose. Form fields requiring input of vehicle details—such as year, make, model, trim, mileage, ZIP code, and condition—lacked accessible labels, instructions, or error messages, making it impossible for NVDA to announce what information was required or whether the information Plaintiff attempted to enter was valid. Navigation menus, dropdown lists, and expandable sections did not announce their state (expanded or collapsed) or provide keyboard-accessible controls to open, close, or navigate between options. Broken ARIA references and improper semantic markup caused NVDA to announce page elements in an illogical or incomplete order, skipping over critical content or presenting information in a manner that did not reflect the visual layout or intended user flow. As a result of these systemic and pervasive accessibility failures, Mr. Rushefsky was once again unable to

complete the vehicle selling process, obtain an appraisal for his Mercedes-Benz, or access Defendant's online services on equal terms with sighted consumers.

**Systemic Accessibility Failures Documented by Independent Audits**

37. The persistent and page-specific accessibility barriers Plaintiff encountered align with the objective violations documented by independent SORT-SITE quality and accessibility validation reports conducted on www.carvana.com. These comprehensive automated audits confirm that the Website's inaccessibility is systemic, pervasive, and affects thousands of pages across Defendant's digital platform.

38. The SORT-SITE Accessibility Validation Report identified **2,648 pages with accessibility problems**, representing 13% worse performance than the average website. The report documented **60 distinct accessibility issues affecting 6,043 pages**, with widespread violations of fundamental WCAG Level A criteria—the most basic tier of accessibility compliance required under the ADA.

Specific accessibility violations identified in the SORT-SITE reports include, but are not limited to:

- **Missing Alternative Text**: Images throughout the Website, including vehicle photos, logos, icons, and promotional graphics, lack descriptive alternative text, causing screen readers to announce them only as "graphic" or "image" without any information about their content or purpose.
- **Empty Buttons**: Interactive buttons lack accessible names or labels, causing screen readers to announce them only as "button" without any indication of their function or what action will occur when activated.

- **Empty Links**: Links throughout the Website lack accessible text, causing screen readers to announce them only as "link" without any indication of their destination or purpose.

- **Missing Form Labels**: Form fields, including input boxes for VIN numbers, vehicle details, contact information, and search queries, lack programmatically associated labels, making it impossible for screen-reader users to determine what information is required.

- **Broken ARIA References**: ARIA attributes intended to convey semantic information and relationships to assistive technology are improperly implemented or reference non-existent elements, causing screen readers to provide incorrect or incomplete information.

- **Contrast Errors**: Text and interactive elements fail to meet minimum color contrast ratios required by WCAG standards, making content difficult or impossible to perceive for users with low vision or color blindness.

- **Improper Semantic Markup**: Page elements such as headings, lists, landmarks, and navigation regions are not properly marked up using semantic HTML, making it difficult for screen-reader users to navigate efficiently or understand the structure and hierarchy of page content.

39. The SORT-SITE Site Quality Report confirmed that **2,649 pages have quality issues**, including **1,808 pages with broken links or other errors**. Broken links, missing resources, and server configuration errors compound the accessibility barriers faced by blind users, as screen readers cannot distinguish between functional and non-functional

links, forcing users to waste time attempting to activate links that lead nowhere or produce error messages that are themselves inaccessible.

40. The SORT-SITE Broken Link Report identified **877 script errors and broken links** across the Website, including CSS file link errors, images with incorrect MIME types, and server configuration issues that prevent content from loading properly. These technical failures further impair the ability of screen-reader users to access Website content, as missing or improperly configured resources can cause pages to render incompletely or behave unpredictably when accessed with assistive technology.

41. The sheer scale of the accessibility violations documented in the SORT-SITE reports—**2,648 inaccessible pages**, **60 distinct types of accessibility issues**, and **6,043 affected pages**—demonstrates that Defendant's failure to provide accessible digital content is not the result of isolated oversights or minor coding errors, but rather a systemic failure to design, develop, test, and maintain the Website in accordance with established accessibility standards. The violations affect core functionality essential to the vehicle selling process, including navigation menus, search interfaces, form inputs, interactive controls, and informational content, thereby denying blind and visually impaired users the full and equal enjoyment of Defendant's services.

**<u>Plaintiff's Intent to Return Upon Remediation</u>**

42. Mr. Rushefsky continues to own his classic Mercedes-Benz and continues to seek an accessible online platform through which he can independently sell his vehicle. He remains interested in using Carvana's services and intends to return to www.carvana.com to complete the vehicle selling process once Defendant has fully remediated the Website's

accessibility barriers to comply with WCAG 2.1 Level AA standards and applicable federal, state, and local accessibility laws.

43. Plaintiff's intent to return to www.carvana.com upon remediation is not speculative or hypothetical. He has made four separate attempts to access and use the Website over a period of several months, demonstrating his genuine and ongoing desire to utilize Defendant's services. His continued ownership of the Mercedes-Benz and his inability to sell it through other accessible means confirm that he will suffer ongoing harm unless and until Defendant remediates the Website's accessibility failures.

44. Accordingly, Plaintiff has both past injury and a concrete, particularized intent to use Defendant's Website in the future, establishing both retrospective and prospective standing to pursue injunctive relief requiring Defendant to make www.carvana.com fully accessible to blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3). The proposed Class is defined as:

> **All legally blind individuals in the United States who have attempted to access www.carvana.com and have been denied full and equal access to the facilities, goods, and services offered thereon due to Defendant's failure to design, maintain, and operate the Website in a manner compatible with screen-reading software and in conformance with the Web Content Accessibility Guidelines (WCAG 2.1 Level AA).**

The proposed New York Subclass is defined as:

**All legally blind individuals residing in the State of New York who have attempted to access www.carvana.com and have been denied full and equal access to the facilities, goods, and services offered thereon due to Defendant's failure to design, maintain, and operate the Website in a manner compatible with screen-reading software and in conformance with the Web Content Accessibility Guidelines (WCAG 2.1 Level AA).**

The proposed New York City Subclass is defined as:

**All legally blind individuals residing in New York City who have attempted to access www.carvana.com and have been denied full and equal access to the facilities, goods, and services offered thereon due to Defendant's failure to design, maintain, and operate the Website in a manner compatible with screen-reading software and in conformance with the Web Content Accessibility Guidelines (WCAG 2.1 Level AA).**

**Numerosity**: The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. According to the American Foundation for the Blind, approximately 26 million American adults report significant vision impairment, and millions of these individuals rely on screen-reader software to access the Internet. Defendant operates a nationwide e-commerce platform that receives millions of visitors annually, and a substantial number of those visitors are blind or visually impaired individuals who have encountered or will encounter the accessibility barriers described herein.

**Commonality**: There are questions of law and fact common to the Class and Subclasses, including:

- Whether Defendant's Website, www.carvana.com, is a place of public accommodation under Title III of the ADA;
- Whether Defendant has violated Title III of the ADA by failing to design, maintain, and operate www.carvana.com in a manner accessible to blind and visually impaired individuals;
- Whether Defendant's Website contains accessibility barriers, including but not limited to missing alternative text, empty buttons and links, broken ARIA references, missing form labels, and contrast errors, that prevent blind users from accessing the full and equal enjoyment of Defendant's goods, services, privileges, and advantages;
- Whether Defendant's failure to conform www.carvana.com to WCAG 2.1 Level AA standards constitutes discrimination under the ADA, NYSHRL, NYCHRL, and NYCRL;
- Whether Plaintiff and the Class Members are entitled to injunctive relief requiring Defendant to remediate the Website's accessibility barriers;
- Whether Plaintiff and the New York Subclass Members are entitled to statutory damages, compensatory damages, and punitive damages under the NYSHRL, NYCHRL, and NYCRL.

46. **Typicality**: Plaintiff's claims are typical of the claims of the Class and Subclasses. Plaintiff and all Class Members are blind or visually impaired individuals who rely on screen-reader software to access websites. Plaintiff and all Class Members have been denied full and equal access to www.carvana.com due to the same systemic accessibility

barriers, including missing alternative text, unlabeled interactive controls, inaccessible forms, and broken ARIA references. The injuries suffered by Plaintiff are identical in kind and degree to those suffered by all Class Members.

47. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class and Subclasses. Plaintiff has retained competent counsel experienced in class action litigation and ADA website accessibility cases. Plaintiff has no interests antagonistic to those of the Class and Subclasses.

48. **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the Class and Subclasses predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

- Individual joinder of all Class Members is impracticable;
- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant;
- Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive relief appropriate with respect to the Class and Subclasses as a whole;
- A class action will achieve economies of time, effort, and expense, and promote uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

49. **Injunctive and Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)): Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive relief and declaratory relief appropriate with respect to the Class and Subclasses as a whole. The systemic accessibility barriers affecting www.carvana.com apply uniformly to all blind and visually impaired users, and the injunctive relief sought—requiring Defendant to remediate the Website in conformance with WCAG 2.1 Level AA—will benefit all Class Members equally.

**FIRST CAUSE OF ACTION**

**(Violations of the Americans with Disabilities Act, Title III, 42 U.S.C. § 12181 *et seq.*)**

50. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a), provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

52. Defendant owns, operates, and controls www.carvana.com, a commercial website that offers goods, services, and privileges to the public, including the purchase and sale of used vehicles, vehicle appraisals, financing options, and related automotive services. The Website is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7) because it is a sales establishment, a service establishment, and an online marketplace that

serves the general public and is not a private club or establishment otherwise exempt under the ADA.

53. Courts within the Second Circuit and nationwide have consistently held that commercial websites are places of public accommodation subject to Title III of the ADA when they offer goods, services, or privileges to the public. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Markett v. Five Guys Enterprises LLC*, 2019 U.S. Dist. LEXIS 10637 (S.D.N.Y. Jan. 23, 2019).

54. Plaintiff is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), because he has a physical impairment—profound and permanent vision loss due to Leber Hereditary Optic Neuropathy—that substantially limits one or more major life activities, including seeing, reading, and performing activities of daily living.

55. Defendant has violated and continues to violate Title III of the ADA by failing to design, maintain, and operate www.carvana.com in a manner that provides blind and visually impaired individuals with full and equal access to the goods, services, facilities, privileges, and advantages offered on the Website.

56. The accessibility barriers documented on www.carvana.com—including missing alternative text for images, empty buttons and links, broken ARIA references, missing form labels, contrast errors, and improper semantic markup—prevent blind users who rely on screen-reader software from independently navigating the Website, accessing information, and completing transactions on equal terms with sighted users.

57. Defendant's failure to conform www.carvana.com to the Web Content Accessibility Guidelines (WCAG 2.1 Level AA), the industry-standard benchmark for digital accessibility, constitutes a denial of full and equal access in violation of 42 U.S.C. § 12182(a) and the implementing regulations at 28 C.F.R. § 36.101 *et seq.*

58. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff and the Class Members have been denied the full and equal enjoyment of the goods, services, facilities, privileges, and advantages of www.carvana.com. Plaintiff has been unable to independently explore vehicle selling options, obtain an appraisal for his classic Mercedes-Benz, review offers, or complete a sale transaction, thereby suffering ongoing harm and discrimination.

59. Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. § 12188 requiring Defendant to remediate the accessibility barriers on www.carvana.com and to maintain the Website in conformance with WCAG 2.1 Level AA standards, ensuring that blind and visually impaired users can access the Website's full functionality on equal terms with sighted users.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION

**(Violations of the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*)**

61. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62. The New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(2)(a), provides that it shall be an unlawful discriminatory practice for any person,

being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, to refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges thereof because of disability.

63. Defendant's Website, www.carvana.com, is a place of public accommodation under the NYSHRL because it is a commercial establishment that offers goods, services, and privileges to the general public.

64. Plaintiff is an individual with a disability under the NYSHRL because he has a physical impairment—profound and permanent vision loss due to Leber Hereditary Optic Neuropathy—that substantially limits major life activities, including seeing, reading, and navigating digital interfaces.

65. Defendant has violated and continues to violate the NYSHRL by failing to design, maintain, and operate www.carvana.com in a manner that provides blind and visually impaired individuals with full and equal access to the goods, services, facilities, privileges, and advantages offered on the Website.

66. As a direct and proximate result of Defendant's violations of the NYSHRL, Plaintiff and the New York Subclass Members have been denied the full and equal enjoyment of the goods, services, facilities, privileges, and advantages of www.carvana.com.

67. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under N.Y. Exec. Law §§ 296, 297, and 298.

## THIRD CAUSE OF ACTION

**(Violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*)**

68. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a), provides that it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, to refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges thereof because of disability.

70. Defendant's Website, www.carvana.com, is a place of public accommodation under the NYCHRL because it is a commercial establishment that offers goods, services, and privileges to the general public, including residents of New York City.

71. Plaintiff is an individual with a disability under the NYCHRL because he has a physical impairment—profound and permanent vision loss due to Leber Hereditary Optic Neuropathy—that substantially limits major life activities.

72. Defendant has violated and continues to violate the NYCHRL by failing to design, maintain, and operate www.carvana.com in a manner that provides blind and visually impaired individuals with full and equal access to the goods, services, facilities, privileges, and advantages offered on the Website.

73. As a direct and proximate result of Defendant's violations of the NYCHRL, Plaintiff and the New York City Subclass Members have been denied the full and equal enjoyment of the goods, services, facilities, privileges, and advantages of www.carvana.com.

74. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under N.Y.C. Admin. Code §§ 8-120 and 8-126.

## FOURTH CAUSE OF ACTION
**(Violations of the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40-c, 40-d)**

75. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. The New York State Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40-c(2), provides that all persons within the jurisdiction of the State of New York are entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, without discrimination because of disability.

77. Defendant's Website, www.carvana.com, is a place of public accommodation under the NYCRL because it is a commercial establishment that offers goods, services, and privileges to the general public, including residents of New York State.

78. Plaintiff is an individual with a disability under the NYCRL because he has a physical impairment—profound and permanent vision loss due to Leber Hereditary Optic Neuropathy—that substantially limits major life activities.

79. Defendant has violated and continues to violate the NYCRL by failing to design, maintain, and operate www.carvana.com in a manner that provides blind and visually impaired individuals with full and equal access to the goods, services, facilities, privileges, and advantages offered on the Website.

80. As a direct and proximate result of Defendant's violations of the NYCRL, Plaintiff and the New York Subclass Members have been denied the full and equal enjoyment of the goods, services, facilities, privileges, and advantages of www.carvana.com.

81. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under N.Y. Civ. Rights Law §§ 40-c and 40-d.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

82. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates, and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, N.Y. Exec. Law § 296 *et seq.*, N.Y.C. Admin. Code § 8-107 *et seq.*, and N.Y. Civ. Rights Law §§ 40-c and 40-d, prohibiting discrimination against the blind.

84. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

85. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.*, and the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40-c and 40-d;

86. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website, www.carvana.com, fully compliant with the requirements set forth in the ADA and the implementing regulations, and in substantial conformance with the Web Content Accessibility Guidelines (WCAG 2.1 Level AA), so that the Website is readily accessible to and usable by blind individuals;

87. A declaration that Defendant owns, maintains, and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.*, and the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40-c and 40-d;

88. An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

89. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

90. Pre-judgment and post-judgment interest;

91. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

92. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
March 19, 2026

**Respectfully submitted,**
**JOSEPH NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com